*Second Judicial District.*

## In the Orphans' Court of Lancaster County.

## ESTATE OF JOHN GYGER, *Dec'd.*

"A grandson cannot be charged with *advancements* made by an intestate grandfather."

Opinion delivered November 16, 1872, by

LIVINGSTON, P. J. In this case we agree with the majority of the auditors in the conclusions arrived at by them, as reported, except as to their charging Abijah D. Gyger with *advancements* made, as they say, to *him* by his *grandfather.*

In doing so, we think they committed an error. Advancements (in cases of *intestacy*), in Pennsylvania, are founded upon and controlled by statute. The act of assembly of April 8, 1833, Pam. Laws, 1833, page 319, § 16 ; Purdon's Dig., 1861, page 565, pl. 35, by which we are governed in cases of *advancements made by intestates*, reads as follows : " If any *child* of an intestate shall have any estate by *settlement* of *such intestate*, or shall have been *advanced by him in his life-time*, either in real or personal estate, to an amount or value equal to the share which shall be allotted to each of the *other children* of such intestate, such *child* shall have no share of the real or personal estate of such intestate, and if such settlement or advancement be to an amount or value less than the share to which he would otherwise be entitled, if no such advancement had been made, then so much only of the real and personal estate of such intestate shall be allotted to such child as shall make the estate of all the said children to be equal, as near as can be estimated."

Our statutes name no parties by whom and to whom advancements may be made, except *parents* and *children*, and our supreme court have, on various occasions, told us very distinctly what *they* understand the word advancement to mean ; that is, "*A pure and irrevocable gift by a parent in his life-time to a child, on account of such child's share of the parent's estate after his decease.*"

And advancements have not at any time since the passage of the act referred to, been recognized in this state between any other parties.

In referring to the case of Wentz, *et 'ux. v.* DeHaven's ex'tr, 1 S. & R. 312, we find on page 314, in the argument of counsel, a reference to 1 Eq. Ab. 381 ; B. Pl. 6, 382 ; B. Pls. 8, 9, 10, 11, wherein it is stated that in England it was held, "even a *grandfather* purchasing an estate in the name of his *grandchild*, where the *father* is dead, is considered as having made the purchase for the *advancement* of the *grandchild*."

But Scott, in his late work on *our* intestate laws, in referring to this citation (on page 266), says : "In Pennsylvania, it may well be doubted, that it will ever be so held as long as the present law exists unchanged, for with *us* the *grandchildren* whose *father died before their grandfather*, the intestate, take not *paramount to their father, but through him by representation*, such estate only as *he* would have taken had he survived the intestate. In the distribution of the grandfather's estate, therefore, the *grandchildren* take, subject to the advancements made to their *father*, and to such debts from *him* to the intestate as were recoverable when the estate descended."

In several of the states, Maine, Kentucky, and others, their statutes are so framed as to include grandchildren with children, and in reference to advancements made by intestates, both classes stand in those states upon an equality.

But in many states the statutes are framed like our own, and embrace but one class, *children*, and there are but few of these states in which cases resembling the one at present under consideration have occurred.

In North Carolina, their statute, like ours, embraces *children only*, and in referring to the cases decided by their superior court, we find, in 2 Jones, (L. & C.) 137, Shinn *v.* Brick, that it has been held that a "*gift to a grandchild is not an advancement, nor is it to be brought into hotch pot.*" And in Headen *v.* Headen, 7 Iredell 150 (Eq.), found in U. S. Dig. vol. 12 (vol. 6 of Annual), title "advancement," it is decided that "grandchildren taking in right of their mothers, were not bound to bring into hotch pot the slaves *put in possession of, but not conveyed to their mothers, but conveyed to themselves ;* but that they *were bound* to bring in those *conveyed to their mother* respectively; that the statute of distributions of North Carolina was *restricted* to gifts *from a parent to a child*, and *did not* include donations to grandchildren."

We are, therefore, of opinion that the auditors erred in charging Abijah D. Gyger, with *advancements*, alleged to have been made to him by his grandfather, in the distribution of his intestate grandfather's estate ;

and that they should have charged him with nothing but such *debts* due from *him* to his grandfather as might have been recovered from him by his grandfather in his life-time, or by the administratrix of his estate, after his decease. But, as this question was not raised *distinctly* before the auditors, and as their report shows that they did not examine into, and discriminate between what they term *debts* and advancements, with as much strictness and particularity or nicety as they would have used had this question been fully contested before them, we re-commit the report to them *to re-investigate the claims made by the administratrix* of the estate of John Gyger, deceased, against Abijah D. Gyger, and report any further or additional testimony taken by them concerning the same, together with the distribution made by them after such investigation, to this court.

Messrs. *Landis* and *Price*, for exceptant; *D. G. & B. F. Eshleman*, contra.